UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WAYNE COLE JOHNSON,                          CIVIL NO. 06-157 (JRT/JSM)

      Petitioner,

v.                                          REPORT AND RECOMMENDATION

ROBERT FENEIS,

      Respondent.

      JANIE S. MAYERON, U.S. Magistrate Judge

      This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1], Respondent has filed an Answer to Petition for Writ of Habeas Corpus [Docket No. 4] and a Memorandum in Opposition to Petitioner's Habeas Corpus Reply [Docket No. 5]. This matter was decided on the submissions of the parties.

      This matter has been referred to this Court for a Report and Recommendation pursuant 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1.

## I.    FACTUAL BACKGROUND

      On September 27, 2001, Petitioner Wayne Cole Johnson ("Petitioner") was charged by complaint with a controlled substance possession crime in the first degree, in violation of Minn. Stat. § 152.021, subd. 2(1), and a controlled substance sale crime in the first degree, in violation of Minn. Stat. § 152.021, subd. 1(1).  The complaint asserted that Petitioner was arrested in possession of a toolbox containing a large quantity of methamphetamine and a couple of baggies of methamphetamine in his shirt pocket.  Prior to trial, Petitioner moved to suppress the methamphetamine found in a

consent search of the toolbox and to suppress the methamphetamine and a handwritten note that were found during a pat-down search of Petitioner's shirt pocket.  The trial court denied the suppression motion as to the evidence from the toolbox, and initially granted the motion to suppress the evidence from Petitioner's pocket on the grounds that the officer's seizure of this evidence exceeded the permitted scope of a pat-down search for weapons.  <u>See</u> Appellant's Appendix A1-A6 (attached as part of Petitioner's Memorandum in Support of Petitioner for § 2254).  On a motion for reconsideration, the trial court issued an amended order denying the motion to suppress the evidence from Petitioner's pocket pursuant to the inevitable discovery doctrine.  <u>See</u> Appellant's Appendix A7-A12.

During the trial, Petitioner moved for a mistrial because the prosecutor asked him on cross-examination a question regarding his post-<u>Miranda</u> silence.  <u>See</u> Trial Transcript ("Tr."), 620-21.   The request for mistrial was based on the following exchange:

> Q.  And they found dope in your pocket?
>
> A.  Yes.
>
> Q.  And yet you didn't tell either officer that that dope  -- I found it, it's my cousin's, it's not mine.
>
> A.  That's right.
>
> Q.  Up until today have you ever told anyone that this dope didn't belong to you, that it was your cousin's, you found it in the bedroom?
>
>> MR. HAWKINS:  Your Honor, may we approach?
>>
>> THE COURT:  You may.

Tr.  620.

A conference was at held at the judge's bench, out of the hearing of the jury.  Tr. 621.  The jury was excused, after which Petitioner's counsel objected to and moved for a mistrial based on the prosecution's attempt to elicit that the defendant chose after his arrest to exercise is Fifth Amendment right to remain silent based on the question of "up until today have you ever told anyone that this dope didn't belong to you, . . .?"  Tr. 620-21.  The judge sustained the objection but denied the request for a mistrial.  Tr. 623.  In doing so, the trial court instructed the prosecution not to ask any questions regarding whether Petitioner spoke to the police.  Tr. 623-24.  Petitioner's counsel asked that the trial court instruct the jury to disregard the question posed by the prosecution.  Tr. 624.  When the jury returned to the courtroom, the trial court instructed them as follows:

> For the jury's information, and this is an instruction to you regarding the last  -- the most recent questioning from Mr. Williams of Mr. Johnson.  Mr. Williams was questioning Mr. Johnson regarding his prior statements given.
>
> We as citizens, or for that fact anyone in this country, is [sic] not required under the United States Constitution to talk to law enforcement or anyone else.  The jury is not to make any inferences from whether or not Mr. Johnson did so.  We have a right in this country, from the day we are born, not to give any evidence or speak against ourselves or in any such way.  Mr. Johnson is, in fact, waiving that right of his own free will.   Anything else that he might have said in the past is irrelevant.  You are only to consider what he says here in this courtroom today.

Tr. 625-26.

Petitioner later moved again for a mistrial, claiming that the curative instruction had exceeded his request in that the Court had improperly commented on Petitioner's right to remain silent.  Tr. 641-45.  The Court denied the motion for a mistrial.  Tr. 642.

Petitioner was subsequently was convicted of a first-degree controlled substance crime under Minn. Stat. § 152.021, subd. 2(1), and was sentenced to 129 months, an upward durational departure from the presumptive sentence of 86 months.

Following his trial and conviction, Petitioner appealed to the Minnesota Court of Appeals, arguing that: 1) the trial court erred by failing to suppress the evidence obtained as a result of the search of Petitioner's shirt pocket; (2) the trial court erred when it did not grant a mistrial after the prosecutor alluded during cross-examination to Petitioner's post-arrest silence and that the trial court compounded the error by giving a lengthy curative instruction that drew attention to the improper question; and (3) the trial court abused its discretion by departing upward from the sentencing guidelines based on the quantity of drugs.  The Minnesota Court of Appeals held in State v. Johnson, No.  C0-03-96, 2004 WL 193196 (Minn. Ct. App. Feb. 3, 2004) that: (1) the search was constitutional because police had probable cause to arrest Petitioner, making pat search a lawful search incident to arrest; (2) the prosecution's question regarding Petitioner's post-arrest silence was a harmless error beyond a reasonable doubt and that the trial court's curative instruction, although longer than usual, was a correct statement of the law; and (3) the trial court did not abuse its discretion by imposing an upward durational departure at sentencing.  The Minnesota Supreme Court denied review on April 20, 2004.

Petitioner filed his Petition for Habeas Corpus Relief in this Court.  Ground One of the Petition asserted that Petitioner's conviction was obtained by the use of evidence recovered from his pocket, which was retrieved as part of an unconstitutional search and seizure in violation of the Fourth Amendment.  See Petition; see also Memorandum

in Support of Petition for § 2254 Habeas Corpus Relief ("Pet.'s Mem.") at pp. 1-6.  In his Second Ground for relief, Petitioner argued that he was denied due process and a fair trial when the prosecutor cross-examined him about and attempted to impeach him with his post-arrest silence.  See Petition; see also Pet.'s Mem. at pp. 6-10.

In response to Petitioner's application for a writ of habeas corpus, Respondent argued that Petitioner cannot assert habeas relief based on an alleged violation of the Fourth Amendment.   In addition, Respondent argued that the prosecution's single question during cross exanimation regarding Petitioner's post-arrest silence did not violate his constitutional rights or have a substantial or injurious effect or influence on the jury's verdict against him.

## II.    DISCUSSION

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d): Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.  See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case.  See Copeland, 232 F.3d at 973.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at 362). Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."  May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

### B.    Petitioner's Fourth Amendment Claim

The Court finds that Petitioner's Fourth Amendment claim is not properly before this Court.  Fourth Amendment claims are not cognizable in federal habeas proceedings if the state provided the petitioner an opportunity for the full and fair litigation of such claims.  See Stone v. Powell, 428 U.S. 465, 494 (1976); see also Palmer v. Clarke, 408 F.3d 423, 437 (8th Cir. 2005) (same) (citation omitted).  "The Eighth Circuit uses a two-part test to determine if a full and fair opportunity to litigate a claim has been provided." Wilson v. State, No. Civ. 00-1194 (JRT/JGL), 2002 WL 1752208, at *2 (D. Minn. July 29, 2002) (citing Willett v. Lockhart, 37 F.3d 1265 (8th Cir.1994)).  In this regard, "a Fourth Amendment habeas corpus claim is barred by Stone v. Powell unless: 1) 'the state provided no procedure by which the prisoner could raise his Fourth Amendment claim' or 2) 'the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.'"  Wilson, 2002 WL 1752208, at *2 (quoting Willett, 37 F.3d at 1273); see also Palmer, 408 F.3d at 437.  As to the first part of this test, the Eighth Circuit has stated that it finds "petitioner's 'opportunity' for full and fair litigation should not depend upon whether he has taken advantage of the process available. . . ."  Willett, 37 F.3d at 1271.  Further, "[t]he federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation."  Id. at 1273.

In this case, Petitioner had an opportunity, through an omnibus hearing at the state trial court level, to address his argument that the search of his person was unconstitutional.  Further, Petitioner also raised this issue in a post-conviction motion for

a new trial.  See September 19, 2003 Order, attached as part of the Appendix to Respondent's Memorandum in Opposition to Petition for Writ of Habeas Corpus [Docket No. 6].   In addition, Petitioner was able to raise these claims during the appeals process. There is nothing before this Court, including any assertion by Petitioner, to suggest that he was foreclosed from using any procedure available to him to raise his Fourth Amendment claim arising out the seizure of evidence from his pocket at the state court level, much less because of an unconscionable breakdown in the system. Therefore, this Court finds that Petitioner is not entitled to relief on Ground One of his Petition.

### C.   Use of Petitioner's Silence as Impeachment Evidence

As stated previously, Petitioner argued that he was denied due process and a fair trial when the prosecutor cross-examined him about and attempted to impeach him with his post-arrest silence, and that the trial compounded this error by repeatedly commenting on Petitioner's right to remain silent.   Respondent has argued that the Minnesota Court of Appeals correctly concluded that no violation occurred, and in any event, the prosecutor's inquiry did not have a substantial and injurious effect or influence on determining the jury's verdict against Petitioner.

### 1.   Doyle Violation

Relying on Doyle v. Ohio, 426 U.S. 610 (1976) and Greer v. Miller, 483 U.S. 756 (1987), the Minnesota Court of Appeals concluded that "although it is error to ask a question touching on a defendant's right to remain silent, where an objection is made and sustained and a curative instruction given, that error is harmless."  When a person is arrested, is told that he has the right to remain silent, and does remain silent, a

prosecutor cannot use that silence at trial to impeach a defendant's testimony.  <u>See</u> <u>Doyle</u>, 426 U.S. at 618; <u>see</u> <u>also</u> <u>United States v. One Star</u>, 465 F.3d 828, 832 (8th Cir. 2006) ("Using a defendant's post-arrest, post-Miranda silence as impeachment evidence violates the Due Process Clause.") (citation omitted).    In <u>Greer</u>, the prosecution asked the defendant a question regarding his post-arrest silence.  483 U.S. at 759.  Defense counsel immediately objected, and out of the hearing of the jury, defendant's lawyer requested a mistrial on the ground that the prosecutor's question violated the defendant's right to remain silent after arrest.  <u>Id.</u>  The trial judge denied the motion for mistrial, but immediately sustained the objection and instructed the jury to ignore the question.  <u>Id.</u>  The Supreme Court concluded that since no further questioning or argument regarding defendant's silence occurred, and the court advised the jury that it should disregard any questions to which an objection was sustained, the defendant's post-arrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus, no <u>Doyle</u> violation had occurred.  <u>Id.</u> at 764-65.

In this case, Petitioner's counsel asked to approach the bench prior to Petitioner answering the question posed by the prosecution relating to his post-arrest silence.  Tr. 620-21.  The trial court discussed and sustained the objection raised by Petitioner after the jury had been removed from the courtroom.  Tr. 623.  Petitioner's counsel asked for a curative instruction to the jury to disregard the question posed by the prosecution.  Tr. 624.  When the jury returned to the courtroom, the trial court's statement, although long-winded, instructed them not to make inferences from whether Petitioner talked to law

enforcement and that they were only to consider what Petitioner said during his trial.  Tr. 625-26.

This Court does not find that the decision by the Minnesota Court of Appeals that the prosecution's question touching on Petitioner's right to remain silent was harmless, was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court, where the question was immediately objected to, the Petitioner did not answer the question, and the trial Court gave a curative instruction ordering the jury not to make inferences from whether Petitioner talked to law enforcement.   The instruction was requested by defendant and was appropriate in order to ensure that Petitioner's silence, as inferred by the prosecution, was not considered by the jury.

2.   Harmless Error

The Minnesota Court of Appeals in Petitioner's case also went on to find, with regards to the alleged Doyle violation, that:

> Here, the prosecutor asked a single question, defense counsel promptly objected, no answer was given, and the district court gave a curative instruction. Although this curative instruction was somewhat longer than those given in the above cases, it was an accurate statement of the law. Further, defense counsel raised the issue again with his client shortly after making two motions for a mistrial. The evidence that appellant was guilty of first-degree possession of a controlled substance is strong enough so that, although it was error to pose the question, it was harmless beyond a reasonable doubt.

Johnson, 2004 WL 193196 at *2 (emphasis added).

Where a state court conducts its own harmless error analysis with regards to a constitutional trial error and concludes that any error was harmless beyond a

reasonable doubt, given the evidence presented against a defendant, then the habeas court is to review the error made during the trial under the harmless error standard espoused by the United States Supreme Court in Brecht v. Abrahamson, 507 U.S. 619 (1993).[1]   See Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir. 1999) (citing Joubert v. Hopkins, 75 F.3d 1232, 1245 (8th Cir. 1996)).   Under Brecht, which dealt with a Doyle violation, an error is harmless unless the court finds "that the error, in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict."   See Calderon v. Coleman, 525 U.S. 141, 147 (1998);   see also Juarez v. Minnesota, 217 F.3d 1014,1017 (8th Cir. 2000) (citations omitted).

Because the Minnesota Court of Appeals conducted a harmless error analysis consistent with Chapman, the Court reviews Petitioner's claim under the Brecht standard.  In light of the overwhelming evidence presented at trial of Petitioner's guilt, the inquiry by the prosecution and the curative instruction given by the trial court did not have a "substantial and injurious effect or influence" on the verdict.   See Brecht, 507 U.S. at 637.

A pat-down search of Petitioner in Middle River, Minnesota by law enforcement yielded 43.9 grams of methamphetamine in his shirt pocket, $500 in cash and note discussing an electronic scale.   Tr. 110-11, 124-125, 264, 267, 275.   In addition, Petitioner voluntarily provided police with a key that opened up a toolbox in his vehicle

---

[1]   This Court notes that the Eighth Circuit applies a stricter standard under Chapman v. California, 386 U.S. 18 (1967) in the context of habeas review, requiring a finding that a constitutional error was  harmlessness beyond a reasonable doubt, if the state court has not conducted its own harmless error analysis.  See Beets v. Iowa Dep't of Corrections Servs., 164 F.3d 1131, 1134 n. 3 (8th Cir.), cert. denied, 528 U.S. 825 (1999) (citations omitted).

and he was seen by police carrying the toolbox to his vehicle.  Tr.  108-09, 112-13, 209-10, 268-69, 271-75.  The toolbox contained 272 grams of methamphetamine.  Tr. 275, 364-67.  Petitioner admitted that he knew the substance in his possession was a narcotic, and that prior to his encounter with police he had unlocked the toolbox and taken some of the methamphetamine out and placed it into his pocket, locking the rest in the toolbox.  Tr. 570, 574-75.  Rick Olson, Petitioner's supplier and cousin, testified that Petitioner gave him this toolbox and lock to so that Petitioner could later carry the methamphetamine.  Tr. 421, 450-451.  While Petitioner claimed that he gave the toolbox to Olson because he had asked for tools, the toolbox contained a few old tools that would not account for why Petitioner gave him the padlock for the toolbox.  Tr. 272-73, 560, 593-94, 657-58.

Moreover, Petitioner's explanation that he drove 250 miles to Middle River at night, in the middle of the work week, to pick up the toolbox with old tools from Olson, and drop off a friend to see a mechanic about fixing his truck, was impeached by facts presented at trial.  In particular, Petitioner traveled to a wreck of a house to meet with Olson, even though he did not reside there.  Tr. 569, 602, 605-06, 615, 649, 658.  In addition, the truck that needed to be repaired only had a rusty truck box that had been in that condition for a substantial amount of time, providing little reason why they would travel such a long distance in the middle of the week to inquire about this minor repair, as opposed to talking over the telephone during normal business hours.  Tr. 655-56.  Further, there was no explanation from Petitioner why he took the toolbox with drugs from the ramshackle house rather than leaving it and going to confront Olson about the methamphetamine contained therein.  Tr. 613-14, 627-28.

Given the evidence presented at trial, the jury was no more likely to have found him innocent of the first-degree drug possession charge, if the single question pertaining to his post-_Miranda_ silence had not been asked, and the curative instruction by the trial court had not been given.  As such, this Court finds that any _Doyle_ violation did not have a substantial and injurious effect or influence on the jury verdict.[2]

## III.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

Dated:          January 18, 2008

s/ _Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 4, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[2]     This Court notes that it would have arrived at the same decision as the Minnesota Court of Appeals and found that any _Doyle_ violation was harmless beyond a reasonable doubt under the stricter _Chapman_ standard.